**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| WENDY SUMMER KNIGHT, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-cv-00185 |
| | § | |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Wendy Summer Knight ("Knight") seeks judicial review of an administrative decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Knight and Defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 19, 21. After reviewing the briefing, the record, and the applicable law, Knight's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings.

## BACKGROUND

Knight filed her applications for benefits on August 10, 2016, alleging disability beginning March 16, 2016. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Knight was not disabled. Knight filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Knight had not engaged in substantial gainful activity since March 16, 2016.

The ALJ found at Step 2 that Knight suffered from "the following severe impairments: chronic obstructive pulmonary disease, pulmonary nodule, hypertension, status post hysterectomy, obesity, degenerative joint disease of the knee, depression, and anxiety." Dkt. 16-3 at 14.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Knight's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, pushing and pulling within those exertional limitations, standing and walking for six hours in an eight hour workday, sitting for six hours in an eight hour workday, avoiding all concentrated exposure to fumes, dust, gases, odors, poor ventilation, and pulmonary irritants, understanding, remembering, and carrying simple instructions, with only occasional contact with the general public.

*Id.* at 21.

At Step 4, the ALJ found that Knight was unable to perform her past work as a cashier and waitress or as an "order filler." And, at Step 5, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Knight] can perform." *Id.* at 27.

## DISCUSSION

This is a single-issue appeal. Knight contends that the ALJ improperly discounted the medical opinion of an examining physician, Ross Keiser, PhD ("Dr. Keiser"), and relied on the contradicting opinion of a non-examining physician, Ashok I. Khushalani ("Dr. Khushalani"). Knight argues that this error requires remand "for further administrative proceedings, including a *de novo* hearing and a new administrative decision." Dkt. 20 at 18. I agree.

In formulating the RFC, the ALJ considered medical opinions concerning Knight's physical and mental limitations. Dr. Keiser and Dr. Khushalani both opined on Knight's mental limitations. Dr. Keiser, who actually examined Knight, diagnosed her with panic disorder, agoraphobia, and histrionic personality disorder. *See* Dkt. 16-12 at 66. In addition to these specific diagnoses, Dr. Keiser expressly identified certain areas of Knight's mental functioning as mildly, moderately, and significantly impaired. *See id.* The ALJ assigned Dr. Keiser's medical opinion "[s]ome weight,"[1] explaining that "[g]reater weight [wa]s not given to [Dr. Keiser's] report because a specific residual functional capacity assessment was not provided; and because [he] stated the claimant had significant deficits in social adjustment." Dkt. 16-3 at 26. The ALJ went on to explain that he rejected Dr. Keiser's social adjustment finding because Dr. Khushalani had disputed that "assessment as unsupported by the record, or by Dr. Keiser's examination itself." *Id.* Knight challenges both of the ALJ's reasons for discounting Dr. Keiser's opinion.

---

[1] It is unclear to me what this means because "some" is an amorphous word.

**Specific RFC Assessment**. The ALJ first states that he discounted Dr. Keiser's opinion because Dr. Keiser did not provide "a specific residual functional capacity assessment." *Id*. My assumption is that the ALJ did not believe that Dr. Keiser adequately opined on how the mental impairments he identified would impact Knight's ability to work. But it is still unclear to me exactly what the ALJ was expecting. My best guess[2] comes from looking at the ALJ's discussion about Dr. Khushalani's findings. In that portion of the decision, the ALJ states that Dr. Khushalani found as follows: "[a]s to limitations, [Knight] has mild restrictions on the ability to understand, remember and apply information, moderate restrictions on the ability to interact with others, mild restrictions on the ability to maintain concentration, persistence, or pace, and moderate restrictions on the ability to adapt and manage herself." *Id*. at 17. The format of this finding corresponds to 20 C.F.R. § 404.1520a(c)(3), which identifies "four separate areas deemed essential for work" that an ALJ uses to "evaluate the degree of functional loss resulting from [an] impairment." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The four broad functional areas are as follows: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). In evaluating each category, the regulations call for the use of a five-point scale: "[n]one, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id*. § 404.1520a(c)(4).

While it is true that Dr. Keiser did not offer an opinion exactly matching the terminology used in 20 C.F.R. § 404.1520a, Dr. Keiser did specifically opine that Knight's ability to: "reason is mildly impaired"; "make occupational adjustments is moderately impaired"; "make personal adjustments is significantly impaired"; and "make social adjustments is significantly impaired." Dkt. 16-12 at 66. In my view,

---

[2] To the extent that my guess is wrong, it only highlights that the ALJ's decision is not adequately clear.

these findings are substantially similar to the type of assessment required by 20 C.F.R. § 404.1520a. I recognize that the term "significant" is not on the five-point scale, but Dr. Keiser's use of "mild" and "moderate" implies that his usage of "significant" means something more than "mild" and "moderate." In terms of the five-point scale, "significant" can mean either "marked" or "extreme." For this reason alone, I find the ALJ's first explanation for rejecting Dr. Keiser's opinion inadequate.[3]

**Significant Deficits in Social Adjustment**. Next, the ALJ rejected Dr. Keiser's finding that Knight "had significant deficits in social adjustment." Dkt. 16-3 at 26. The ALJ explained that he did so because Dr. Khushalani had disputed that "assessment as unsupported by the record, or by Dr. Keiser's examination itself." *Id*. In other words, the ALJ rejected this finding because the non-examining physician, Dr. Khushalani, disagreed with the examining physician, Dr. Keiser.

The responsibility to determine a claimant's RFC belongs to the ALJ, but in making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). With respect to an ALJ's reliance on a non-examining physician's opinion, the Fifth Circuit has stated "an ALJ may properly rely on a non-examining physician's assessment when . . . those

---

[3] The ALJ received live testimony from Dr. Khushalani, but apparently did not seek such testimony from Dr. Keiser. It is unclear to me why the ALJ did not simply request additional information from Dr. Keiser. After all, the ALJ knew well that Dr. Keiser had examined Knight and stood ready to provide additional information if necessary. *See* Dkt. 16-12 at 67 ("If I might be of further assistance, please do not hesitate to contact me."). Any lack of clarity in Dr. Keiser's opinion could have been resolved with reasonable effort and without substantial delay if the ALJ simply sought such information. *See, e.g.*, *Gryner v. Colvin*, No. 3:14-CV-608-CWR-FKB, 2016 WL 1305259, at *3 (S.D. Miss. Mar. 31, 2016) ("It is clear that additional development of the record, specifically in the form of opinions from the treating physicians, could have been easily obtained, and probably would have been helpful, had the ALJ sought such information." (citation omitted)).

findings are based upon a careful evaluation of the medical evidence *and do not contradict those of the examining physician.*" *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (emphasis added). Moreover, outside of *Villa*, the Commissioner's regulations make clear that generally, "we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

In this case, the ALJ relied on Dr. Khushalani's opinion for the express purpose of contradicting Dr. Keiser's opinion. This runs afoul of the rule announced in *Villa* and the Commissioner's regulations and "render[s] improper the ALJ's reliance on [Dr. Khushalani's] assessment in order to support a finding of not disabled." *Moore v. Berryhill*, No. 1:16-CV-150-RP, 2017 WL 1608744, at *6 (N.D. Miss. Apr. 28, 2017).

**Harmless Error**. Although the ALJ erred as explained above, I must still consider whether the error was harmless. "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013). In seeking to apply this standard, I am confronted by the fact that I have no idea how the ALJ will choose to weigh Dr. Keiser's opinion on remand. Indeed, he may well take my advice and solicit a more detailed opinion from Dr. Keiser—a possibility that would result in a new medical opinion. I can neither predict nor speculate about how the ALJ will choose to confront this issue. Because "conflicts in the evidence are for the Commissioner and not the courts to resolve," I conclude that it is conceivable that the ALJ could make a different administrative decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (cleaned up).

## CONCLUSION

For the reasons provided above, Knight's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 6th day of July 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE